IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  11-cv-00581-WYD-KMT

WYATT T. HANDY JR.,

      Plaintiff,

v.

SGT. CUMMINGS, individual and official capacity,
DEP. WENDELBURG, individually,
DEP. THAO, individually,
DEP. LIGON, individually,
DEP. ELLEDGE, individually,
DEP. GIRARD, individually,
GRETCHEN SETTAMBRINO, individual and official capacity,
TERRI WOOD, individual,
MELINDA MOLLENDOR, individual,
DEP. LITWILER, individual and official,
NANCY SIVAK, individual,
DEP. KRAUS, individual,
DEP. GALLEGOS, individual,
DEP. HUNT, individual,
SGT. CLARK, individual and official capacity,
SGT. DOIZAKI, individual and official capacity,
DEP. EMERSON, individual,
DEP. KLEINHEKSEL, individual,
SHERIFF GRAYSON ROBINSON, individual and official capacity,
CAPT. SAUTER, individual,
LT. WHITAKER, individual and official capacity,
SGT. RANKIN, individual and official capacity,
DEP. FREEMAN, individual,
DEP. LONGFELLOW, individual,
DEP. HAMM, individual,
LT. WICKSTROM, individual and official,
LT. VIENOT, individual and official,
DEP. TERRY, individual,
DEP. C. JONES, individual,
DEP. VIGIL, individual,
SGT. NORDI, individual and official,
ARAPAHOE COUNTY SHERIFF DEPARTMENT, and
DEP. VINCENT, individual.

      Defendants.

**ORDER AFFIRMING IN PART AND REJECTING IN PART
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

I.    INTRODUCTION

This matter is before the Court on the "Motion for Summary Judgment of All

Defendants Except County of Arapahoe to Plaintiff's Third Amended Complaint" filed

March 29, 2012.[1]  The motion was referred to Magistrate Judge Tafoya, and a

Recommendation of United States Magistrate Judge (ECF No. 193) was issued on

November 27, 2012.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1),

D.C.COLO.LCivR. 72.1.C.3.  Magistrate Judge Tafoya recommends therein that

summary judgment be granted in favor of all remaining Defendants on all of Plaintiff's

claims.  On December 12, 2012, Plaintiff filed a timely "Response and Objections to the

United States Magistrate Judge Recommendation" (ECF No. 198) [hereinafter

"Objections"].  Defendants filed a "Response to Plaintiff's Response to the Magistrate

Judge's Findings and Recommendation" (ECF No. 203) on January 11, 2013.

II.    ANALYSIS

A.    Preliminary Matters

I note as a threshold matter that Magistrate Judge Tafoya recommends that

Defendants Settambrino, Mollender and Wood be dismissed at Plaintiff's request.  She

---

[1]  The County of Arapahoe was previously dismissed as a defendant on September 26, 2012, and is thus not listed on the Caption.  I further note that Deputy Morrison was dismissed as a Defendant on December 21, 2011.  While he was included in the caption of the Third Amended Complaint that was accepted for filing by Order of January 5, 2012, ECF No. 118, Magistrate Judge Tafoya ruled in that Order that the claims against Mr. Morrison were not accepted.

also recommends that Claims Ten, Thirteen and Fourteen be dismissed, as Plaintiff has no objection to their dismissal.  No objections having been filed to this portion of the Recommendation, I affirm and adopt these recommendations.[2]  Defendants Settambrino, Mollender and Wood are dismissed, as are Claims Ten, Thirteen and Fourteen.

I also note that Plaintiff has no objections to other portions of the Recommendation.  Thus, as to Claims One and Three asserting retaliation, Plaintiff states that he has no objections to the recommendation that summary judgment be granted as to actions related to Plaintiff's placement in administrative segregation, failure to credit Plaintiff with administrative segregation time, purposeful loss of an envelope, and the May 17, 2011 writeup.  (Objections at 15, 19; *see also* Recommendation at 31-36.)  He also has no objection to the recommendation that summary judgment be granted as to Defendant Emerson as to alleged threats of physical violence.  (Objections at 15; *see also* Recommendation at 29-30.)  Finally, Plaintiff has no objection to the recommendation that summary judgment be granted on the basis of qualified immunity as to Claim Six asserted against Defendants Robinson, Sauter, Fogg and Cummings alleging a violation of his right to self-representation.  (Objections at 37; Recommendation at 50-52.)  I affirm the above recommendations, finding no clear error.

---

[2]  When no objections are filed to any portion of the recommendation, I am vested with discretion to review that portion "under any standard [I] deem[] appropriate."  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Nonetheless, though not required to do so, where there are no objections I have reviewed the findings in the Recommendation to "satisfy [my]self that there is no clear error on the face of the record."  *See* Fed. R. Civ. P. 72(b) Advisory Committee Notes.

Defendants also point out in their response that Plaintiff's objection includes two attempts to raise discovery issues as a basis for any deficiencies in his evidence and to raise an issue of the Court's denial of his requests for appointment of counsel. (Objections at 24-27, 33.)  However, there is nothing in Defendants' Motion for Summary Judgment or Plaintiff's Response thereto relating to discovery issues or appointment of counsel.  I agree with Defendants that Plaintiff failed to present and preserve his alleged discovery issues in accordance with Rule 56(d), and that such discovery issues are deem waived.  *See Hoover v. Ward*, 109 F. App'x 213, 215 (10th Cir. 2004) (unpublished).  Similarly, to the extent that Plaintiff seeks review of the denial of his motions for appointment of counsel, this is not properly within the scope of review of the Recommendation.[3]

Defendants also assert that Plaintiff is not currently incarcerated in the Arapahoe County Detention Facility ["ACDF].  Therefore, I agree that Plaintiff's requested relief for preliminary and permanent injunctive relief against the Defendants is denied as moot. *See Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004).

I also note before beginning my discussion of the merits of Plaintiff's claims that the Recommendation finds that Plaintiff submitted his Third Amended Complaint, the operative complaint, under penalty of perjury.  (Recommendation at 13.)  Accordingly, Magistrate Judge Tafoya found, and I agree, that the court may treat that pleading as an affidavit.  (*Id.*)  However, I also agree with her finding that whether Plaintiff's allegations

---

[3]  Plaintiff's Motions for Appointment of Counsel were denied on April 22, 2011 (ECF No. 22) and May 18, 2012 (ECF No. 157), without objection by Plaintiff.  Thus, he has waived any arguments related to same.

in the Third Amended Complaint are "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that 'conclusory allegations without specific supporting facts have no probative value.'"  (Recommendation at 14) (quotation omitted).  I will thus determine, as did Magistrate Judge Tafoya, "whether Plaintiff has come forward with specific facts to overcome Defendants' Motion for Summary Judgment." (*Id.*)  I will not rely on unsubstantiated allegations in the Third Amended Complaint.

Finally, although not commented on in the Recommendation, I note that Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment ["Declaration"] that is attached to his response to the summary judgment motion is not signed by Plaintiff and is not verified to be under penalty of perjury.  Accordingly, it does not constitute evidence that can be considered on summary judgment.  *Flemming v. Corrections Corp. of Am.*, 143 F. App'x 921, 925 n. 1 (10th Cir. 2005) (unpublished) (citing *Mason v. Clark*, 920 F.2d 493, 495 (8th Cir. 1990)); *Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1569 n. 12 (10th Cir. 1992); *see also* 28 U.S.C. § 1746 (setting forth requirements of declarations under penalty of perjury).  I now turn to the merits of Plaintiff's Objections to the Recommendation.

B.    Plaintiff's Objections

Plaintiff's Objections necessitate a *de novo* determination as to those specified proposed findings or recommendations to which objection is made since the nature of the matter is dispositive.  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).  "In order to conduct a *de novo* review a court 'should make an independent determination of the

issues ...; [it] 'is not to give any special weight to the [prior] determination.'" *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. First City Nat. Bank,* 386 U.S. 361, 368 (1967)) (internal quotation marks omitted). While the court may place whatever reliance on the "recommendation its merit justifies, the court must review the record in light of its own independent judgment." *Id.*

      1.  <u>Retaliation</u>

I first address Plaintiffs' lengthy objections as to the recommendations regarding Claims One and Three alleging retaliation. Those claims allege that Defendants violated Plaintiff's First Amendment rights by "level[ing] a campaign of harassment and retaliation against the plaintiff, for him filing grievances and lawsuits, for the purpose of chilling and punishing him for engaging in federally protected activity." (Third Am. Compl. at 34, ¶ 83.) Plaintiff alleged a number of allegedly retaliatory actions by Defendants, which were examined in depth in the Recommendation. This included, among other things, the denial of physical law library access, lock down orders, cell searches and confiscation of Plaintiff's property, threats of violence, counterclaims, and confiscation of Plaintiff's legal and religious materials. (Recommendation at 19-42.)

Magistrate Judge Tafoya concluded, after a detailed analysis, that Plaintiff did not establish through specific facts that Defendants' actions would not have occurred but for a retaliatory motive. (Recommendation at 19-42.) She also found that even when the facts are viewed in a light most favorable to him, Plaintiff "failed to establish that either (1) he was engaged in constitutionally protected activity, (2) Defendants' actions were sufficient to chill a person of ordinary firmness from continuing to engage in that activity,

or (3) Defendants' adverse actions were based on Plaintiff's exercise of his constitutional rights." (*Id.*)  Because Plaintiff failed to establish that Defendants infringed upon his constitutional right to be free from retaliation, it was recommended that Defendants be granted qualified immunity and that summary judgment be granted as to the retaliation claims.  (*Id.* at 41-42.)  In addition, to the extent that any Defendants were not discussed in the Recommendation, Magistrate Judge Tafoya found that Plaintiff failed to establish that they personally participated in any allegedly retaliatory conduct. (*Id.*)  I now turn to the specific acts of alleged retaliation complained of by Plaintiff that are the subject of his Objections.

a.   <u>Physical Law Library Access</u>

Plaintiff first objects to the finding regarding Defendant Cummings' denial of physical law library access to Plaintiff on October 26, 2010.  Plaintiff asserts that Cummings did this in retaliation for Plaintiff filing a grievance against Deputy Morrison for an October 25, 2010, pat search.  Magistrate Judge Tafoya found that Plaintiff cannot establish that Cummings' actions would not have occurred but for a retaliatory motive.  (Recommendation at 19.)  She noted on that issue that although Cummings made the decision to deny Plaintiff physical access only one day after Plaintiff grieved Deputy Morrison, temporal proximity alone is not sufficient to satisfy the strict but-for causation requirement of retaliation.  (*Id.*)  She also noted that Plaintiff attached to his Third Amended Complaint over 50 grievances filed between October 26, 2010 and August 14, 2012, and that under these circumstances, temporal proximity between an

inmate's exercise of his right of access to the courts and some form of jailhouse discipline alone is insufficient to establish a causal connection. (*Id.* at 18.)

Plaintiff's Objections first assert that he presented sufficient evidence to establish temporal proximity.  Specifically, he asserts that contrary to the Recommendation's finding that he was a litigious prisoner, the October 25, 2010 grievance was the very first grievance he filed.  In light of this, Plaintiff argues that temporal proximity between the grievance and the law library denial should be sufficient to establish a causal connection.  I disagree.  Defendants have presented evidence that Plaintiff had previously filed grievances.  (*See* Ex. A to Defs.' Resp. to Pl.'s Objections, ECF No., 203, attaching two previous grievances and a request from Plaintiff for forms to file complaints against police officers).  Moreover, I agree with the Recommendation that temporal proximity between an inmate's exercise of his rights and the alleged retaliation alone is insufficient to establish a retaliation claim. *Friedman v. Kennard*, 248 F. App'x 918, 922 (10th Cir. 2007) (unpublished).[4]  This is especially apposite in this case given the sheer volume of grievances that Plaintiff filed over the applicable time period.

Magistrate Judge Tafoya also found that Defendant Cummings presented evidence that he did not learn of the October 25, 2010, pat search involving Deputy Morrison until March 2011–approximately five months after the denial of access to the law library.  (Recommendation at 19-20.)  She noted that this was the only competent evidence on this topic, and that Plaintiff had not introduced evidence that creates a

---

[4]  The case relied on by Plaintiff, *Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990), does not support his argument that temporal proximity alone is sufficient, as in that case there was other evidence that supported a finding that a jury could reasonably find retaliation.

genuine dispute of material fact as to whether Cummings knew that Plaintiff had grieved

Deputy Morrison when he deprived Plaintiff of physical access to the law library—much

less that the grievance was the but for cause of Cummings' actions.  (*Id.* at 20.)  Plaintiff

objects to these findings, arguing he presented evidence sufficient to establish a

genuine dispute of material fact on this issue.

Plaintiff asserts in that regard that prior to the denial of access to the law library,

and in despite of his placement in administrative segregation, he had been authorized to

attend the law library.  This is not relevant, however, to whether Defendant Cummings

had knowledge of the grievance against Morrison.  Further, as the Recommendation

notes, Plaintiff does not cite to competent evidence on this issue.  He cites only to

allegations in his original complaint or to exhibits attached to that Complaint.  That is not

sufficient as his amended complaint superseded his original complaint, and "'render[ed]

it of no legal effect.'"  *Capital v. U.S.*, No. 12-5018, 2012 WL 6217494, at *3 (10th Cir.

Dec. 14, 2012) (unpublished) (quotation omitted).

Based on the foregoing, I overrule Plaintiff's objections as to alleged retaliation

by Defendant Cummings based on the denial of physical law library access.  The

recommendation to grant summary judgment as to this portion of Plaintiff's retaliation

claims is affirmed.

b.    Lock Down Orders

Next, Plaintiff objects to the findings in the Recommendation regarding lock down

orders which occurred by Defendant Elledge on October 27 and 28, 2010, and January

22, 2011.  Magistrate Judge Tafoya found, among other things, that Plaintiff failed to

establish his grievances were the but-for cause of Defendant Elledge's lock-down orders.  (Recommendation at 21-23.)

More specifically, Magistrate Judge Tafoya noted that Elledge submitted sworn testimony that his lock-down of Plaintiff on October 27, 2010 and January 22, 2011, wherein Plaintiff allegedly was locked down ten minutes early, was at the direction of the Detention Operations Technician ("D.O.T.").  (Recommendation at 21-22.)  On both occasions, Elledge presented evidence that he escorted Plaintiff into his cell on lock-down only after Plaintiff had refused to comply with the D.O.T.'s order to "lockdown." (*Id.* at 22.)[5]  While Plaintiff does not dispute that the D.O.T. made that order, he relies on conclusory assertions in his Declaration and other documents wherein he states that he was locked down by Elledge for filing the grievance against Morrison.  I find that these conclusory allegations are insufficient to establish a causal connection, as they fall short of constituting "'*specific facts* showing retaliation because of the exercise of [his] constitutional rights.'"  (Recommendation at 22) (emphasis in original) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).[6]  Further, Plaintiff's assertion that upon receiving the grievance against Morrison, Elledge began hassling and yelling at Plaintiff, telling him he has no rights, does not alter the evidence that Elledge locked Plaintiff down at the order of the D.O.T., not based on any grievance against Morrison.

---

[5]  The fact that Elledge did not identify the D.O.T or that sworn testimony was not submitted from the D.O.T. does not alter or detract from this evidence.

[6]  I also found in Section II.A. *supra*, that the Declaration is not competent evidence since it is unsigned and unverified.

It was also found in the Recommendation that to the extent Elledge is alleged to have taken away Plaintiff's entire hour of free time on October 28, 2010, Defendants submitted evidence demonstrating that Plaintiff was "written up and placed on 'shift lockdown'" that same day for "disorderly conduct after repeatedly calling Defendant Emerson a 'bitch.'"  (Recommendation at 22) (quotations omitted).  Plaintiff did not address this in his objection, or present specific facts to refute Defendants' evidence that his hour of free time was taken from him because he was on shift lockdown.  (*See id.* at 22-23.)

Based on the foregoing, I overrule Plaintiff's objections as to the lock downs. The recommendation to grant summary judgment as to this portion of Plaintiff's retaliation claims is affirmed and adopted.

c.    <u>Cell Searches</u>

Plaintiff also objects to the findings in the Recommendation regarding cell searches in January, February and April 2011.  Defendants state that they occurred pursuant to routine laundry exchange cell searches, and not in retaliation for any acts of Plaintiff.  This is denied by Plaintiff.

Magistrate Judge Tafoya first noted on this issue that periodic cell searches are an integral and regular component of prison life and that inmates have no right to privacy with respect to cell searches.  (Recommendation at 24) (citing *Hudson v. Palmer,* 468 U.S. 517, 526, 529-30 (1984)).  Thus, she found that "the mere fact that Plaintiff was the target of cell searches alone is insufficient to establish the adverse

-11-

action necessary to establish a § 1983 retaliation claim." (*Id.*) I agree and affirm this finding, and note that Plaintiff did not raise an objection to same.

Magistrate Judge Tafoya then found that Defendants' actions taken while searching Plaintiff's cell were either not "adverse actions" sufficient to chill a person of reasonable firmness from exercising their protected rights, or not causally connected to Plaintiff's filing of grievances. (Recommendation at 27.) She stated, "Plaintiff once again primarily relies on the fact that Defendants' searched his cell shortly after he filed a grievance against Defendant Cummings, which, at the risk of redundancy, is insufficient in this case to satisfy the causation element of a retaliation claim." (*Id.* at 25.) Even when viewed in a light most favorable to Plaintiff, the Recommendation found the facts to be insufficient to establish a § 1983 retaliation claim. (*Id.*) Plaintiff objects to these findings.

I first address the January 2011 search. Defendants submit that this search was conducted by Ligon, Thao and Girard. (Mot. Summ. J. ¶ 22.) While Plaintiff admits that these three Defendants searched his cell, and that normally two to three deputies search a cell, he asserts that seven to ten deputies came to his cell, all of whom were supervised by Cummings. (*Id.*; Resp. Mot. Summ. J. at 5 ¶¶ 21-22; Third Amended Complaint ["TAC"] ¶ 7.) This is a disputed issue of fact. Plaintiff also asserts that while his cell was searched he remained outside the cell with the other four to seven deputies (*id.*), while Defendants assert that these other deputies had left the area to conduct laundry exchange cell searches in other pods. (Mot. Summ. J. at 6 ¶ 21.) This is also a disputed material issue of fact. This incident allegedly occurred a day after Plaintiff filed

a grievance against Cummings, and Plaintiff alleges it would not have happened but for retaliatory motive.  (TAC ¶ 7.)

Magistrate Judge Tafoya found, and I agree, that the fact a team of seven to ten deputies gathered outside Plaintiff's cell during that search is insufficient, on its own, to satisfy the adverse action element of a retaliation claim.  (Recommendation at 24.) While Plaintiff claims he was nervous and felt intimated, Plaintiff concedes that only three deputies actually entered his cell.  (Pl.'s Declaration ¶11.)  He further admits that two to three deputies normally search a cell.  (*Id.*)  I find that this action would not deter an inmate of ordinary firmness from continuing to exercise his right to file grievances or other constitutional rights.

However, Defendants' conduct is more problematic when viewed with the other actions that occurred during that search, *i.e.*, including the alleged taking of Plaintiff's pencils and other materials he claimed to need for his legal work.  Plaintiff disputes several of Magistrate Judge Tafoya's factual findings that supported her finding that Plaintiff did not show an adverse action as to same, and I find some merit to his objections as to these findings.[7]

---

[7]   For example, the Recommendation found that Plaintiff did not dispute that he was left with several working pencils.  (Recommendation at 25.)  Plaintiff did, however, dispute this, claiming that all his pencils were thrown away.  (*See* Resp. Mot. Summ. J. at 5-6, ¶¶ 22, 24-25.)  Further, he filed a grievance that same day indicating that all of his pencils, erasers and highlighters were thrown away.  (TAC, Ex. F-1.)  He also filed a grievance requesting that these materials be returned so he could do his legal work, and stating that none of the other inmates were targeted this way.  (*Id.*, Ex. F-2.)  Plaintiff also alleges that during this cell search he was given clothes four sizes too small.  Magistrate Judge Tafoya found as to that issue that Plaintiff admitted inmate trustees are the ones who provide the laundered clothes and that the clothes are not always labeled correctly.  (Recommendation at 25) (citing Mot. Summ. J. at 7 ¶ 20 and Resp. at 5 ¶  20.)  However, Plaintiff later asserted that the clothes are distributed to inmates by staff, not inmate trustees.  (*See* Mot. Summ. J. at 7 ¶ 23 and Resp. at 5-6 ¶ 23.)  He also submitted a grievance indicating that he told the deputies that he was given clothes that were too small and was ignored by them, and that he had to wear dirty clothes for a week because of this.  (TAC, Ex. F-2.)

Nonetheless, even if I were to determine that Plaintiff has shown adverse action in connection with the January 2011 search, I still find that the Recommendation must be affirmed as to the claim of retaliation based on this search.  As the Recommendation correctly notes, Plaintiff must still demonstrate a causal connection between the protected conduct and the adverse action.  (Recommendation at 18.)  Plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers. . . would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).  I agree with the finding that Plaintiff failed to proffer specific facts to create a genuine issue of material fact that the exercise of his constitutional rights was the but-for cause of Defendants' actions during that cell search.  (*See* Recommendation at 25.)

In that regard, I note that Tenth Circuit cases "allow an inference" of whether the defendants' actions were causally connected to the protected conduct where the evidence shows "(1) the defendants were aware of the protected activity; (2) the plaintiff directed his complaint to the defendants' actions; and (3) the alleged retaliatory act 'was in close temporal proximity to the protected activity.'" *Allen v. Avance*, 491 F. App'x 1, 5 (10th Cir. 2012) (unpublished) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)).  Here, Plaintiff has not shown as to the January 2011 search that Ligon, Thao and Girard were aware of the grievance filed against Cummings the day before or that Plaintiff's complaint was directed at their actions.  While Plaintiff asserts that these Defendants were directly supervised by Cummings, and Cummings admitted that part of his responsibilities as a staff sergeant is to supervise cell searches during laundry exchange, Cummings presented unrefuted evidence that he was not on duty the day of

this search.  (Mot. Summ. J., Ex. A-2, Aff. of Michael Cummings ¶¶ 9, 12.)  Accordingly, I find no basis to infer Defendants Ligon, Thao and/or Girard's knowledge of Plaintiff's protected activity.  I also find no other specific facts or evidence to support a finding that Defendants' actions were causally connected to the grievance filed against Cummings.

The same analysis applies to the April 2011 search, which was allegedly conducted by Defendants Girard, Longfellow, and Hamm.  Plaintiff asserts that their actions during this search occurred due to a grievance filed seven days earlier against Defendants Litwiler and Rankin (TAC, Ex. EE-1) and other unspecified grievances.  Again, Plaintiff has not shown that Girard, Longfellow, and Hamm had knowledge of that grievance or the other grievances, and has not cited other facts or evidence that supports a finding that their actions during the search were causally connected to same.

Finally, the February 2011 search was allegedly conducted by Defendants Girard and Wendelburg under the direct supervision of Cummings.  (Resp. Mot. Summ. J. at 6 ¶ 24; TAC ¶ 11.)  Plaintiff asserts that this search and the removal of his personal property was due to a grievance he filed against Cummings, Girard and others on February 1, 2011.  (TAC ¶ 11 and Ex. I and J thereto; Resp. Mot. Summ. J. at 6 ¶ 24.)  Plaintiff further asserts that Wendelburg was the recipient of this grievance.  (TAC ¶ 11.)  Accordingly, Plaintiff has set forth facts which support an inference that Girard and Wendelburg were aware of this grievance.  Further, the search took place in close proximity to the grievance.

However, I agree with Magistrate Judge Tafoya that Plaintiff has not shown that the actions of the Defendants in connection with that search would chill a person of

ordinary firmness from continuing to engage in the protected activity.  The only allegation related to this search is that Girard and Wendelburg entered into Plaintiff's assigned cell and threw way Plaintiff's highlighter that he used for his legal work.  (TAC ¶ 121.)  No punitive action was taken, and there are no allegations that Plaintiff felt threatened or nervous as to this search.  A trivial or de minimus injury will not support a retaliation claim.  *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007); *see also Fleming v. Clark*, No. 09-CV-1038 DAK, 2012 WL 4343836, at *6 (D. Utah Sep. 21, 2012) (unpublished) (allegations about cell search and confiscation of papers did not show that defendants did anything that would chill an inmate of ordinary firmness from continuing to file grievances or lawsuits).  Further, while not dispositive of the issue, I note that Plaintiff certainly was not deterred from exercising his constitutional rights given the fact that he filed a grievance as to that activity as well as numerous other grievances.  *See Fleming*, 2012 WL 43438736, at *6.

Based on the foregoing, the recommendation to grant summary judgment as to retaliation based on cell searches is affirmed, and Plaintiff's Objections as to this issue are overruled.

### d.   Confiscation of Money Release Forms

As to Plaintiff's retaliation claim related to confiscation of money release forms by Defendants Elledge and Mollendor, Magistrate Judge Tafoya again found that Plaintiff failed to establish a causal connection between Defendants' actions and the exercise of Plaintiff's constitutional rights.  (Recommendation at 27.)  She found that Plaintiff did not dispute that these forms were removed only because they had been revised and were

to be replaced.  (*Id.*) Indeed, Plaintiff admitted that the staff was directed to remove outdated forms from the pods.  (Mot. Summ. J. at 7 ¶ 26; Resp. at 6 ¶ 26.)  However, Plaintiff's Objections are correct that he disputed that Mollender and Elledge were authorized to confiscate "used " forms from inmates that were kept as records, and states that he informed these Defendants that his forms were going to be used as evidence in a lawsuit.  (Mot. Summ. J. at 7 ¶ 27; Resp. at 6-7 ¶ 27.)

Nonetheless, I find that summary judgment should be granted as to this claim.  First, I agree with Magistrate Judge Tafoya that Plaintiff did not present any evidence to support his conclusory assertion that "[t]his incident would never had [sic] happened 'but for' retaliatory motive."  (TAC ¶ 8.)  Plaintiff does not identify any grievance or other protected activity that these Defendants were allegedly responding to when they took these forms.  Nor does he provide any other facts as to why Defendants were motivated by retaliation in taking Plaintiff's used money release form.

I also find that the confiscation of these forms was not sufficient to deter an inmate of ordinary firmness from continuing to file grievances or lawsuits.  *See Fleming*, 2012 WL 4343836, *6 (allegations about cell search and confiscation of papers did not show that defendants did anything that would chill an inmate of ordinary firmness from continuing with protected activity); *Grohs v. Hayman*, No. 09-5273, 2010 WL 2346617, at *8 (D.N.J. June 8, 2010) (unpublished) (search and accompanying destruction of papers would not deter an ordinary prisoner from filing grievances).  Indeed, while Plaintiff asserts that he wished to use these forms in a lawsuit, he failed to allege an actual injury caused by confiscation of these forms.

Based upon the foregoing, the Recommendation to grant summary judgment based on the alleged retaliatory act of confiscation of money forms is affirmed, and Plaintiff's Objections are overruled.

e.    Threats of Violence, Counterclaims, and Discipline

I now turn to the findings regarding the retaliation claim based on alleged threats of violence, counterclaims and discipline.  Magistrate Judge Tafoya found that Plaintiff failed to establish that the threats "either (1) actually occurred, (2) were sufficient to chill a person of reasonable firmness from exercising his constitutional rights, or (3) were causally connected to Plaintiff's exercise of his constitutional rights."  (Recommendation at 30.)  Thus, she found that Plaintiff "failed to establish that he was threatened in retaliation for exercising his constitutionally protected rights."  (*Id.*)  I now turn to the specific threats alleged by Plaintiff to determine if Plaintiff's Objections to the above findings have merit.

Plaintiff first asserts that on December 19, 2010, the day after he submitted a grievance against Cummings for denying him access to the law library, Cummings told Plaintiff that he would not be receiving any "special treatment," that he "should not be filing grievances against his deputies," and that he would place Plaintiff on a "Captain's Segregation Order" after Plaintiff suggested that he was going to file a lawsuit for violation of his constitutional rights.  (TAC ¶¶ 4, 5 and Ex. D-1.)  The "Captain's Segregation Order" is allegedly the worst punishment in the prison.  (*Id.*)  Plaintiff claims that this was an effort by Cummings to intimidate him.  (*Id.*)  Plaintiff takes issue with

the finding in the Recommendation that these threats would not deter a person of reasonable firmness from exercising their constitutional rights.

I agree with Magistrate Judge Tafoya that alleged threats that Plaintiff would not receive special treatment or that he should not file grievances against Cummings' deputies would not be sufficient to chill an inmate of ordinary firmness from continuing to exercise his constitutional rights. *See McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (mere threats and taunts are insufficient to make out a constitutional violation); *Fleming*, 2012 WL 4343836, at *7 (allegation that defendants derided and provoked plaintiff after he stated his intention to file a grievance was not sufficient to chill a person of ordinary firmness).[8]  While the threat to place Plaintiff on a "Captain's Segregation Order" may arguably be sufficient to chill an inmate of ordinary firmness, *Fleming*, 2012 WL 4343836, at *7, Plaintiff's grievance states that Cummings made this alleged threat in response to Plaintiff's submission of kites threatening other inmates. (TAC, Ex. D-1.)  I agree with the Recommendation that Plaintiff has not submitted any specific facts or evidence, other than his personal belief, that this threat was made to retaliate against Plaintiff for filing grievances.  Accordingly, I also affirm this portion of the Recommendation.

---

[8]  Moreover, as noted by Magistrate Judge Tafoya, in the grievance filed regarding this incident Plaintiff did not state that Cummings denied him "special treatment" because he filed grievances; instead, he stated that Cummings denied Plaintiff "special treatment" to the extent that he sought physical access to the law library inconsistent with his placement in administrative segregation.  (Recommendation at 28) (citing TAC, Ex. D-1.)  Thus, Plaintiff's own evidence does not support that this threat was made in retaliation for Plaintiff's protected conduct.

Plaintiff also challenges an alleged threat by Cummings on February 15, 2011, that he would file a counterclaim against Plaintiff if Plaintiff sued him for retaliation. (TAC ¶ 13.)  This allegedly occurred the day after Plaintiff filed a grievance against Cummings.  (*Id.*)  Again, Plaintiff challenges the finding that this was not an adverse action.  I overrule the objection as to this issue, agreeing with the Recommendation that an inmate of ordinary firmness "would not be deterred from exercising their constitutional rights by a defendant's speculative threat that he will file an unspecified counterclaim in an inmate's yet-to-be-filed lawsuit."  (Recommendation at 29) (citing *Robinson v. Dean Foods Co.*, 08-cv-01186-REB-CBS, 2009 WL 2382764, at *4-5 (D. Colo. July 30, 2009)).  Plaintiff has not cited to any authority which would indicate that a contrary result is required.  Accordingly, this finding is also affirmed.

Finally, Plaintiff points to threats of physical violence against him by Defendant Doizaki.  (TAC ¶¶ 42, 43) (citing Exs. B-1, B-2, LL-1 and LL-2.)  Plaintiff admits that, standing alone, the allegations about these threats are conclusory, but argues that he has supported these allegations with other evidence in the record.  The only specific evidence I could find in the record that could be related to physical violence was a grievance filed by Plaintiff stating that Doizaki threw in his face how he could end up like inmate Winfield.  (TAC, Ex. LL-2.)  However, there is no competent evidence as to how this threat would translate to a threat of physical violence.[9]  In any event, mere threats

---

[9] While Plaintiff asserts that he witnessed Winfield being assaulted by staff three to four days before the threat, he does not cite any evidence other than his Declaration to support this. The Declaration, as previously stated, cannot support Plaintiff's claims as it is unsigned and unverified.

of physical violence by a prison guard have been held to be insufficient to chill an inmate of ordinary firmness from continuing to exercise his constitutional rights. *McBride*, 240 F.3d at 1291 n. 3.

Based upon the foregoing, the recommendation to grant summary judgment as to Plaintiff's retaliation claim based on alleged threats is affirmed, and Plaintiff's Objections are overruled as to this issue.

### f.    Confiscation of Legal Work and Religious Materials

I now turn to the issue of the alleged confiscation of legal work and religious materials occurring on April 29, 2011, and May 25, 2011, by Defendants Doizaki, Emerson, and Kleinheksel.  These incidents allegedly occurred immediately after Plaintiff's filing of grievances and the filing of this lawsuit.[10]  Plaintiff objects to the Recommendation's finding that these are not adverse actions.  (*See* Recommendation at 36.)  He also disputes the factual findings made by Magistrate Judge Tafoya.

In that regard, the Magistrate Judge found that "although Plaintiff disputes that ACDF policy provides that inmates in disciplinary segregation are allowed only one "tub" of property at a time in their cell, he does not dispute that inmates can request access to additional property in order to rotate the items kept in their cells.  (Recommendation at 36) (citing Mot. Summ. J. at 13 ¶ 48; Resp. Mot. Summ. J. 13 ¶ 48.)  Further, she found that Plaintiff does not dispute that he was instructed to decide what property he would place in each tub or that he did not care which of the two tubs remained in his cell.  (*Id.*) (citing Mot. Summ. J. at 13 ¶¶ 50-51; Resp. Mot. Summ. J. at 13-14 ¶ 15-51.)  In light of

---

[10]  This lawsuit was filed on March 8, 2011.  (*See* Prisoner Compl., ECF No. 1.)

this, Magistrate Judge Tafoya found "that a person of reasonable firmness would not be deterred from filing future grievances and lawsuits simply because they did not have twenty-four hour access to all of their personal property—even where that property may include legal and religious materials." (*Id.* at 36-37.)   Thus, she found that Plaintiff failed to establish a § 1983 claim for retaliation based on the alleged removal of his legal work and religious materials.  (*Id.* at 37.)

I disagree, and find that there are genuine issues of material fact as to this issue. First, I note that Plaintiff contends that Defendants Emerson and Kleinheksel were aware that they were taking his legal work and religious materials.  Thus, he alleged that Defendants told Plaintiff on April 29, 2011, that they had to take his legal work. (TAC ¶ 39.)  Plaintiff further alleged that, even though he told them he needed all of his legal work, Defendants forcefully took his box of legal work–including law and documents related to this case against the Defendants.  (*Id.*)  He says this "policy of Sgt. Doizaki, is leveled to target the plaintiff, and to retaliate against him for filing grievances and a law suit against the defendants." (*Id.*)  Indeed, he says in his grievance against Doizaki, Emerson and Kleinheksel that they took his legal work after learning that Plaintiff filed a lawsuit against them, and that it was based on a rule implemented specifically for him.  (TAC, Ex. JJ.)  Due to the alleged confiscation of his legal documents, Plaintiff averred that he was unable to provide a short "memorandum of law" in support of his order to show cause for a preliminary injunction and a temporary restraining order.  (*Id.* ¶ 40.)

On May 25, 2011, Plaintiff alleges that Emerson and Kleinheksel again took his legal work as well as religious materials including a prayer book and prayer schedule. (TAC ¶ 53.)  Plaintiff states in a grievance related to this that Kleinheksel knows exactly what he is talking about in connection with the taking of his prayer book.  (*Id.*, Ex. AAA.) Plaintiff also alleges that he sent numerous requests and grievances for the return of his property to Defendants, who denied the request.  (*Id.*, ¶ 54.)  Indeed, he filed a grievance against Doizaki, Emerson and Kleinheksel claiming that they took his legal work and religious materials in retaliation for Plaintiff filing grievances and complaints against them, and requested that these materials be returned.  (*Id.*, Ex. SS-1.)

Based on the above facts and evidence, I find that there are genuine issues of material fact as to whether Emerson and Kleinheksel took Plaintiff's legal work and religious materials and failed to return them to him, despite his requests.  I further find that this constitutes an adverse action, as I find that it would deter an inmate of ordinary firmness from filing complaints or grievances.  *See Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir.2001)  ("Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom."); *Reneer v. Sewell*, 975 F.2d 258, 260 (6th Cir. 1992) (opening of prisoner's legal mail without justification other than harassment may violate the First Amendment and be sufficient to constitute adverse action); *Davis v. Powell,* No. 10cv1891-CAB, 2012 WL 4754688, at *13 (S.D. Cal. Oct. 4, 2012) (unpublished) (policy making it harder to order religious materials would chill a person of ordinary firmness from exercising his religion); *Doe v. Yates*, No. 1:08-cv-

01219-LJO, 2009 WL 3837261, at *6 (E.D. Cal. Nov. 16, 2009) (Findings and

Recommendations) (unpublished) (cognizable retaliation claim was stated based on

prisoner's allegation that defendant removed his legal materials from his cell and failed

to return all of them), *adopted*, No. 08-cv-0219-LJO, 2010 WL 1287056 (E.D. Cal. Jan.

13, 2010).

Finally, I find that Plaintiff has presented evidence from which an inference can

be drawn that the confiscation of his legal and religious materials was causally

connected to the filing of grievances and/or the complaint in this case against

Defendants.  As noted previously, an inference may be drawn that the defendants'

actions were causally connected to the protected conduct where the evidence shows

"(1) the defendants were aware of the protected activity; (2) the plaintiff directed his

complaint to the defendants' actions; and (3) the alleged retaliatory act 'was in close

temporal proximity to the protected activity.'"  *Allen*, 491 F. App'x at 5 (quotation

omitted).

Here, Plaintiff has presented evidence that his legal materials were first taken

after Defendants learned of this lawsuit, and that the confiscation of these materials was

based on a rule implemented specifically for him.  (TAC, Ex. JJ.)  Further, Plaintiff

asserts that the legal materials were taken a day after this court ordered that

Defendants be served copies of the summons and complaint in this case  (*See* Order

Granting Service by United States Marshal filed April 25, 2011, ECF No. 27.)  I also

note that Plaintiff filed a grievance against Doizaki on May 20, 2011, indicating that he

had filed a motion to amend the complaint in this case to add Doizaki as a defendant.

(TAC, Ex. OO-2.)  This occurred just five days before the incident on May 25, 2011

when both legal and religious materials were taken from Plaintiff.  Doizaki is alleged to

be Emerson's and Kleinheksel's direct supervisor and to be behind the confiscation of

these materials.  (*Id.*, ¶¶ 39, 60, Ex. SS-1.)  Accordingly, I find that Plaintiff has

presented evidence that creates a genuine issue of material fact as to whether

Defendants knew of the protected activity.  Further, Plaintiff's complaint in this case is

obviously directed at the activity of the Defendants.  Finally, I find that the actions of the

Defendants are in close temporal proximity to the protected conduct of Plaintiff.

Based on the foregoing, the Recommendation to grant summary judgment as to

the retaliation claims based on the alleged confiscation of Plaintiff's legal work and

religious materials is rejected.  Defendants' Motion for Summary Judgment is denied as

to this portion of the retaliation claims.

g.   Denial of Legal Telephone Calls

The Recommendation also addressed the denial of Plaintiff's legal telephone

calls to Arapahoe County Court which allegedly occurred on June 28, 2011, by Litwiler

and Whitaker.  (*See* TAC ¶ 67.)  It found that Plaintiff failed to establish that Litwiler and

Whitaker denied his request for legal phone calls in order to retaliate against him for

exercising his constitutional rights.  (Recommendation at 38.)  It further noted that, while

Plaintiff claims he was proceeding *pro se* in the case in Arapahoe County and that he

told Defendants this, Whitaker submitted sworn testimony that he was informed by the

Arapahoe County Court that Plaintiff was represented by legal counsel and was thus

required to address the court through his attorney.  (*Id.*) (citing Mot. Summ. J., Ex. A-35,

-25-

Aff. of Robert Whitaker ¶ 5.)  Plaintiff did not dispute that testimony.  (*Id.)* (citing Resp. at 16, ¶ 61.)  Under these circumstances, the Recommendation found "at very best, the denial of Plaintiff's legal phone call was the result of a mistake" which is insufficient to establish a § 1983 retaliation claim.  (*Id.* at 39.)

It was also found by the Magistrate Judge that Plaintiff did not submit any evidence to support his conclusory assertion that "'but for' the retaliatory motive, [he] would've been allow to make legal phone calls in his *pro se* cases, like other inmates." (Recommendation at 39.)  Thus, Plaintiff did not cite any evidence "to substantiate his position that other inmates were allowed to make legal phone calls on demand in their *pro se* cases or that he was in any way harmed by being denied the requested phone call." (*Id.*)  Accordingly, the Recommendation concluded that Plaintiff failed to establish specific facts showing retaliation due to the exercise of his constitutional rights.  (*Id.*)

Plaintiff objects to these findings, and asserts that he has demonstrated a retaliation claim in connection with the denial of his legal telephone calls.  (Objections at 17-18.)  I disagree, and overrule Plaintiff's objections.  I note that Defendants asserted in their summary judgment motion that:

> 61.  Defendant Whitaker informed Plaintiff that his written kite request for a legal phone call was denied because, according to the court, Plaintiff was represented by legal counsel and the court stated that Plaintiff was not to call the court directly.  Plaintiff was to address the court through his attorney. (Ex. A-35 Defendant Whitaker Aff. at ¶5.)

(Mot. Summ. J. ¶ 61.)  While Plaintiff's response states that the above factual allegations are denied, Magistrate Judge Tafoya is correct that he did not deny or present evidence to refute Defendants' evidence that the court told Whitaker that

Plaintiff was represented by legal counsel and that Plaintiff was not to call the court directly.  (Resp. at 16-17, ¶ 61.)  Accordingly, I find that Whitaker presented evidence to show a valid and nonretaliatory reason for denying Plaintiff's legal telephone call, and Plaintiff did not present evidence or facts sufficient to create a genuine issue of material fact as to a retaliatory motive.  Indeed, Plaintiff's assertion that Whitaker and/or Litwiler had a retaliatory motive in denying Plaintiff the ability to make legal telephone calls is merely conclusory.  I further agree with Magistrate Judge Tafoya that the evidence shows, at best, that Defendants' failure to allow Plaintiff to make this call was a mistake.[11]

Based on the foregoing, I affirm Magistrate Judge Tafoya's recommendation that summary judgment be granted as to the retaliation claim based on the denial of legal telephone calls.  Plaintiff's Objections to this portion of the Recommendation are overruled.

### h.   July 30, 2011 "False" Report

Plaintiff next objects to the portion of the Recommendation addressing the July 30, 2011 "false" report, wherein Defendant Swan allegedly wrote Plaintiff up for false misconduct in retaliation for Plaintiff's filing of grievances against Doizaki.  This  write up occurred, according to Defendants, when Swan went to Pod 4 Dayroom A at the direction of the D.O.T. and asked Plaintiff to move his table.  (Mot. Summ. J. at 15-16 ¶ 64) (citing Aff. of Craig Swan ["Swan Aff."] ¶ 7, Ex. A-27; Aff. of Nancy Sivak ¶ 12d,

---

[11]  Plaintiff's objection that the Court failed to conduct the *Turner* balancing test is without merit since this balancing test is not applicable to retaliation claims.

Ex. A-26.)  Defendants assert that Plaintiff responded with profanity and refused to move the table.  (*Id.*)  Swan states he then ordered Plaintiff to go to his cell and lock down.  (*Id.*)  When Plaintiff's cellmate wanted to get out of the cell, Swan asserts that Plaintiff stated he would not remain on lockdown if the cell doors were open.  (*Id.*)  Plaintiff was then written up for a rule B-20 violation for interfering with the duties of staff involving the security of the facility.  (*Id.*)  Plaintiff denies these allegations, citing to his Declaration.  (*See* Resp. Mot. Summ. J. at 17, ¶ 65.)  While the violation in the July 30, 2011 report was later dismissed, the parties dispute the reason for its dismissal.  (Mot. Summ. J. at 16 ¶ 66; Resp. Mot. Summ. J. at 17 ¶ 66; *see also* TAC, Ex. ZZ.)

Magistrate Judge Tafoya found that Plaintiff failed to establish that Swan acted with a retaliatory motive.  (Recommendation at 39.)  She first found as to that issue that Plaintiff failed to present evidence to refute Defendants' assertion that Swan "'did not know who Plaintiff was or that he had filed grievances and lawsuits.'"  (*Id.* at 39-40) (quoting Swan Aff. ¶¶ 4, 6.)  I agree with and affirm this finding.  Plaintiff cites only to his Declaration to show that Swan knew who he was before this incident, but I previously held that the Declaration is not competent evidence as it is unsigned and unverified.

Even if Swan was aware of Plaintiff, Magistrate Judge Tafoya found that Plaintiff failed to proffer any evidence suggesting that Swan wrote him up in retaliation for filing grievances and lawsuits.  (Recommendation at 40.)  In fact, she noted that "it is not clear what, if any, constitutionally protected activity allegedly precipitated Defendant Swan's actions."  (*Id.*)  I agree, and affirm this finding as well.  Neither the Third Amended Complaint nor the grievance filed as to this incident describes what specific

-28-

grievance or protected activity precipitated this incident and allegedly caused Swan to retaliate against Plaintiff.  (*See* TAC ¶ 70 and Ex. ZZ.)  The grievance says only that the write up was to retaliate against Plaintiff for filing unspecified grievances and lawsuits. (TAC, Ex. ZZ.)  While Plaintiff asserts in his objections that Swan wrote Plaintiff up for false misconduct "in retaliation for Plaintiff filing grievances against Defendant Doizaki, who ordered and authorized Defendant Swan to file the false report" (Objections at 20), he again does not cite what grievances he is referring to or when they were filed. Further, he does not present any evidence that Swan knew of these grievances against Doizaki or that these grievances were the reason why Swan wrote Plaintiff up. Moreover, Plaintiff's allegation that Swan wrote Plaintiff up at the order of Defendant Doizaki, a supervisor, does not support Plaintiff's claim that it was retaliatory, as it shows that the write up would not have been due to Plaintiff's protected activity but to an order of a supervisor.

Based on the foregoing, I agree with and affirm the findings in the Recommendation that Plaintiff failed to show a causal connection between Swan's write up of Plaintiff and Plaintiff's protected conduct.  Accordingly, summary judgment is granted as to this portion of the retaliation claim, and Plaintiff's objections are overruled.

I.     Placement with a Dangerous Inmate

Plaintiff also objects to the finding that summary judgment is appropriate in connection with the alleged retaliatory act of placing him with a dangerous inmate.  This allegedly occurred on April 27, 2011, "the same day that the plaintiff and defendants received copies of the order granting service", when " in retaliation, Sgt. Doizaki,

ordered dep. Elledge and dep. Kleinheksel, to forcefully move the plaintiff, into a cell

with inmate Swiney." (TAC ¶ 38; *see also* Ex. JJ.)  The complaint alleges that inmate

Swiney is 350 pounds, 200 pounds heavier than Plaintiff, and that he was placed on

administrative segregation "for being a bully, intimidater [sic], and a sexual preditor [sic]"

and "for being a threat to the security and safety of inmates." (*Id.*)  In contrast, Plaintiff

alleges he was on administrative segregation because he fears for his safety.  (*Id.*)  It is

undisputed that Swiney was moved out of Plaintiff's cell the next day, on April 28, 2012.

Plaintiff filed grievances about this incident on April 27, 28, and 29, 2011.  (TAC, Exs.

HH, II, JJ.)  He asked therein that he be moved out of the cell with Swiney for his safety,

and stated that Defendants "intentionally moved" Plaintiff "into a cell with an inmate who

you don't even want in [general population] & around other inmates!" (*Id.*)

Magistrate Judge Tafoya found that Plaintiff failed to establish that Swiney was

transferred into Plaintiff's cell to retaliate against him for filing grievances and lawsuits.

(Recommendation at 40.)  That is because Plaintiff failed to present evidence

supporting his "conclusory assertion" that Doizaki, Elledge, and Kleinheksel "'would not

have moved the Plaintiff in the cell with [Swiney] but for a retaliatory motive.'" (*Id.*)

(quoting Resp. Mot. Summ. J. at 18, ¶ 70) (internal quotation marks omitted) (*see also*

TAC ¶ 38.)

Plaintiff asserts that this finding is erroneous.  He protested being housed with

Swiney, who was placed on administrative segregation for violence, and requested to

be with an inmate similarly situated to him who was on administrative segregation for

safety reasons.  (Resp. Mot. Summ. J. at 18 ¶ 70; TAC ¶ 38.)  He further asserts that

this move was questionable as it occurred on the eve of the Defendants receiving copies of the Court's Order in this case granting service by United States Marshal (ECF No. 27), and Defendant Doizaki's threat of violence against Plaintiff.  (Resp. Mot. Summ. J. at 9 ¶ 33.)  I note, however, that the alleged threats of violence by Doizaki did not occur close in time to this incident.  (*See* Section II.B.e, *supra*.)  Further, even if I assume that this move occurred the day after Defendants learned of the Court's Order granting service in this case against them, I find that Plaintiff failed to present specific facts or evidence to create a genuine issue of material fact that Defendants' actions related to Plaintiff's placement with Swiney were causally connected to the Court's Order or to constitutionally protected activity of Plaintiff.

As noted by the Recommendation, "Plaintiff does not dispute that ACDF staff was in the process of consolidating all inmates into one location—which required that inmates be doublebunked—and that Plaintiff and the purportedly dangerous inmate were placed into one cell because they were previously housed next to each other." (Recommendation at 40) (*see also* Mot. Summ. J. at 16-17 ¶¶ 69-70 and Ex. A-24, Aff. of Vince Sauter, Attach. 1; Resp. Mot. Summ. J. at 18 ¶¶ 69-70.)  Plaintiff failed to present facts sufficient to create a genuine issue of material fact that Defendants' real reason for placing inmate Swiney with him was because of retaliation.  Plaintiff also does not dispute that Swiney was returned to the general population only one day after he was placed in the same cell as Plaintiff.  Based on this, I agree with the Recommendation that Plaintiff failed to establish that Doizaki, Elledge, and Kleinheksel's decision to transfer Swiney into Plaintiff's cell would not have occurred

"but for" retaliation.  The Recommendation is affirmed as to this issue, and Plaintiff's Objections are overruled.

> j.      Cumulative Effect of Retaliatory Acts

Finally, Magistrate Judge Tafoya concluded as to Plaintiff's retaliation claims that even when all of the above incidents are considered cumulatively, "Plaintiff has failed to establish that either (1) he was engaged in constitutionally protected activity, (2) that Defendants' actions were sufficient to chill a person of ordinary firmness from continuing to engage in that activity, or (3) that Defendants' adverse actions were based on Plaintiff's exercise of his constitutional rights.  (Recommendation at 41.)  To the extent that any of the remaining Defendants were not discussed, Magistrate Judge Tafoya found that Plaintiff "failed to establish that those defendants personally participated in any allegedly retaliatory conduct." (*Id.*)  Thus, she found that Defendants' Motion for Summary Judgment should be granted as to Claims One and Three asserting retaliation, and that Defendants are entitled to qualified immunity as to these claims. (*Id.* at 42.)  Except to the extent that I found summary judgment should be denied as to the retaliation claim based on the alleged confiscation of Plaintiff's legal and religious materials, I agree with and affirm this portion of the Recommendation.

> 2.      Access to the Courts

I now turn to the objections to the recommendation as to Claims Two and Seven alleging a violation of Plaintiff's First Amendment right of access to the courts and to petition the government for grievances.  Magistrate Judge Tafoya found that Plaintiff failed to establish these claims as he did not submit any evidence that Defendants'

actions caused him any actual injury.  (Recommendation at 44-45.)  Accordingly, she

found that the Defendants sued in these claims are entitled to qualified immunity, and

that summary judgment is proper as to those claims.  (*Id.* at 45.)

Plaintiff objects to the finding that he did not present facts sufficient to show

actual injury.  In support of this, however, Plaintiff refers only to unsubstantiated

allegations which do not detail how he was actually injured by Defendants' actions.

Thus, I agree with the Magistrate Judge that Plaintiff failed to provide evidence that he

was actually impeded in his ability to conduct a particular case as required by *Lewis v.*

*Casey*, 518 U.S. 343, 348-55 (1996).  The Recommendation to grant summary

judgment as to these claims is affirmed, and Plaintiff's Objections are overruled.

### 3.   Religious Rights

Plaintiff also objects to the Recommendation regarding Claims Four and Five

alleging that Robinson, Sauter, Wickstron, Doizaki, Kleinheksel, and Emerson violated

the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and Plaintiff's First

Amendment free exercise rights by confiscating, refusing to return, and then losing his

Islamic prayer book and prayer schedule.  As a threshold matter, the Magistrate Judge

found that Plaintiff could not establish his RLUIPA claim to the extent it was against

Defendants in their individual capacity, as RLUIPA permits cases only against a

government entity and not against an individual official.  (Recommendation at 45-46.)

Plaintiff has not shown any error in this finding.  Accordingly, this finding is affirmed.

Magistrate Judge Tafoya also found that Plaintiff failed to establish that

Defendants Robinson, Sauter, Wickstrom, and Doizaki personally participated in any

violation of his First Amendment rights.  (Recommendation at 46-47.)  Thus, she

recommended that these Defendants be granted qualified immunity and that summary

judgment be entered in their favor on Claims Four and Five.  (*Id.* 49.)  Plaintiff asserts in

his Objections that he did establish personal participation by Robinson, Sauter,

Wickstrom and Doizaki.  Plaintiff points to his allegations that he submitted numerous

kites and grievances to these Defendants requesting that his legal work and religious

materials be returned, and complaining that their subordinates were subjecting him to

constitutional violations.  (*See* TAC at ¶¶ 54, 86.)  However, the Recommendation noted

that "the 'denial of a grievance, by itself without any connection to the violation of

constitutional rights alleged by plaintiff, does not establish personal participation under §

1983.'"  (Recommendation at 47) (quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1069

(10th Cir. 2009)).  Thus, Magistrate Judge Tafoya correctly found that even if

Defendants Doizaki, Robinson, Sauter and/or Wickstrom denied Plaintiff's kites and

grievances requesting the return of his religious materials, this fails to establish the

required personal participation.  (*Id.*)  Accordingly, this portion of the Recommendation

is also affirmed, and summary judgment is granted as to Claims Four and Five against

Defendants Robinson, Sauter, Wickstrom and Doizaki.[12]

Finally, the Recommendation addressed the official capacity claims against

Emerson and Kleinheksel that were asserted in Claims Four and Five.  It found that

---

[12]  To the extent that Plaintiff asserts that any deficiencies in the evidence and his ability to
develop facts as to the nature and extent of the Defendants' involvement is related to the Court's rulings
related to discovery or to Plaintiff's unfamiliarity with the discovery rules, this argument is rejected as
discussed in Section II.A, *supra.*

Plaintiff did not establish that the actions at issue placed a substantial burden on his ability to practice his religion.  (Recommendation at 48.)  In that regard, it was noted that Defendants deny taking Plaintiff's religious materials and cite to the policy that Plaintiff could only have one tub in his cell.  (Recommendation at 48; *see also* Mot. Summ. J. ¶ 50.)  Defendants assert, pursuant to that policy, that Plaintiff's excess property was placed into a second tub and that he indicated he did not care which tub remained in his cell.  (Mot. Summ. J. ¶¶ 50-51.)  Further, they assert that they did not take his religious materials.  (*Id.*; *see also* Ex. A-5, Aff. Of Logan Emerson ¶¶ 9-10; Ex. A-14, Aff. Of David Kleinheksel ¶¶ 7-8; Ex. A-3, Aff. Of Randall Doizaki ¶¶ 6, 8.)  The Recommendation also found that Plaintiff failed to show that Emerson and Kleinheksel were responsible for the loss of his prayer book and that, even if they were, Plaintiff did not establish "that it was anything more than a negligent act."  (*Id.* 49.)  Accordingly, it was recommended that these Defendants also be granted qualified immunity and that summary judgment enter in their favor.  (*Id.*)

Plaintiff asserts in response that he is not alleging that ACDF's policy regarding only one tub of property in disciplinary segregation placed a substantial burden on his ability to practice his religious.  Instead, he asserts that Emerson and Kleinheksel placed a substantial burden on his ability to practice his religious when they confiscated his Islamic prayer book and prayer schedule while he was in administrative segregation, and denied his numerous requests to return the items.  (Objections at 33-34) (citing TAC ¶¶  53-54, 96, 91.)  Indeed, he alleged in the complaint that these religious materials were taken on May 25, 2011, by Emerson and Kleinheksel.  (TAC ¶ 53.)  He

also alleged that he sent numerous requests and grievances for the return of his property to Defendants, who denied the request. (*Id.* ¶¶ 54, 86, 91.)  In support of these allegations, Plaintiff filed grievances against Doizaki, Emerson and Kleinheksel on both May 25, 2011, and August 4, 2011, claiming that they took his religious materials in retaliation for Plaintiff filing grievances and complaints against them, and requested that these materials be returned. (*Id.*, Exs. SS-1, AAA.)

Based on the above facts and evidence, I find that there are genuine issues of material fact as to whether, irrespective of the one tub policy, Emerson and Kleinheksel purposely took Plaintiff's prayer book and prayer schedule and failed to return them to him, despite his requests.  Thus, I must determine whether Plaintiff has shown that the other elements of his religious claims are met.

As to Claim Four alleging a violation of the First Amendment in connection with the free exercise of religion, there is a two-step inquiry. *Peterson v. Lampert*, No. 11-8107, 2012 WL 4857050, at *2 (10th Cir. Oct. 15, 2012) (unpublished).  First, Plaintiff must show "'that a prison regulation substantially burdened sincerely-held religious beliefs.'" *Id.* (quoting *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)).  Second, if the prison-official defendants identify a legitimate penological interest that they contend justified the impinging conduct, the court must then balance the factors set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987) to determine the reasonableness of the regulation. *Kay*, 500 F.3d at 1218.  As to claim five asserting a violation of RLUIPA, Plaintiff must show that he wished to engage in "(1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by

the government." *Peterson*, 2012 WL 4857050, at *3 (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir.2010)).

Thus, as to both claims, Plaintiff must show that his religious beliefs are sincerely held and that the confiscation of his prayer book and prayer schedule substantially burdened his free exercise of religion. Defendants contest both of these elements. I find that Plaintiff has presented evidence that creates a genuine issue of material fact as to these elements. First, as to whether Plaintiff's religious beliefs are sincerely held, it is undisputed that Plaintiff is Muslim. While Defendants assert that Plaintiff's religious beliefs may be questioned since it took over two months for Plaintiff to make the allegation that his prayer book was missing (*see* TAC ¶ 71), they have not shown that this is material. Plaintiff may not have needed the prayer book to prepare for Ramadan until then. Moreover, there is disputed evidence about this since Plaintiff submitted a grievance about the alleged confiscation of his religious materials on the same day he says they were confiscated. (TAC, Ex. SS-1.)[13]

Second, as to whether there was a substantial burden, a person's religious exercise is substantially burdened "when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious

---

[13] Also, while Defendants assert that Plaintiff's claimed sincerely held beliefs may be questioned because Plaintiff left his Qur'an in his cell when he was released from the Detention Facility on August 20, 2011, Plaintiff asserts that the Qur'an belonged to the Detention Center, not to him.

belief or to engage in conduct contrary to a sincerely held religious belief."
*Abdulhaseeb*, 600 F.3d at 1315.  The question is not whether the acts in question
substantially burden "the exercise of any Muslim practitioner", "but whether it
substantially burdens" Plaintiff's "own exercise of his sincerely held religious beliefs."  *Id.*
at 1314.  "'In assessing this burden, courts must not judge the significance of the
particular belief or practice in question", as "'RLUIPA bars inquiry into whether [the]
belief or practice is central to a prisoner's religion.'"  *Id.* at 1314 n. 6 (quotation and
internal quotation marks omitted).

     Here, construing the evidence in the light most favorable to Plaintiff, he has
presented evidence through his verified complaint that the confiscation of his prayer
book and prayer schedule prevents participation in conduct motivated by a sincerely
held religious belief, *i.e.*, he alleges that he was denied the ability to practice and learn
his prayers in Arabic before Ramadan.  (TAC ¶ 71.)  He also stated in a grievance he
filed that the prayer book denied him the ability to practice his religion, especially during
Ramadan.  (TAC, Ex. AAA.)  Defendants do not appear to challenge the religious nature
of these beliefs.  *See Abdulhaseeb*, 600 F.3d at 1314-1315.

     Based on the foregoing, I find that there are genuine issues of material fact as to
whether Plaintiff's rights under RLUIPA were violated.  I also find that Plaintiff has
shown that there are genuine issues of material fact as to the first prong of his free
exercise of religion claim.  As to the second prong, Plaintiff alleged that the confiscation
of his religious materials "serves no legitimate penological interest".  (TAC ¶ 71.)  Again,
while Defendants rely on the fact that the materials were taken pursuant to the one tub

policy, Plaintiff disputes this and alleges that they failed to return his materials despite numerous requests.  Again, I find there are genuine issues of material fact on this issue. Finally, I am unable to determine whether the factors set forth in *Turner v. Safley* are satisfied, as they were not briefed by the Defendants.[14]  However, since Plaintiff is not contesting the policy relied on by Defendants but arguing that his religious materials were taken and were not returned in retaliation for the exercise of his constitutional rights, the *Turner* factors may be inapplicable.

In conclusion as to Claims Four and Five alleging a violation of Plaintiff's free exercise of his religion and RLUIPA, I affirm the recommendation that summary judgment be granted on Plaintiff's RLUIPA claim against Defendants sued in their individual capacity.  I also affirm the recommendation that summary judgment be granted as to Defendants Robinson, Sauter, Wickstrom and Doizaki because Plaintiff failed to show personal participation.  I reject the recommendation that summary judgment be granted as to Claims Four and Five against Defendants Emerson and Kleinheksel in their official capacity, and deny Defendants' Motion for Summary Judgment as to these claims.

4.   Due Process

There is also an objection to the Recommendation's findings as to Claim Eight, alleging that Defendants' actions allegedly taken to retaliate against Plaintiff for filing

---

[14]  Indeed, Defendants argued in their summary judgment motion only that Plaintiff failed to prove that Defendants Emerson and Kleinheksel took Plaintiff's prayer book or that the policy regarding one tub of property in disciplinary segregation was a substantial burden causing Plaintiff to modify or violate his beliefs.  (*See* Mot. Summ. J. 30-31; Reply in Supp. Of Mot. Summ. J. at 11-12.)

grievances and lawsuits amounted to punishment in violation of Plaintiff's Fourteenth

Amendment due process rights.  The Recommendation found "that, to the extent that

this claim is not merely duplicative of Claims One and Three, it nevertheless must fail."

(Recommendation at 52.)  It noted that pretrial detainees "'may not be punished prior to

an adjudication of guilt in accordance with due process of law'" (*id.* at 52) (quoting *Bell*

*v. Wolfish*, 441 U.S. 520, 535 (1979)), but found that Plaintiff did not establish that

Defendants' acts amounted to "punishment."  (*Id.* at 52-53.)  In that regard, Magistrate

Judge Tafoya noted her previous finding that Defendants did not retaliate against

Plaintiff.  (*Id.* at 52).  Accordingly, she found that Plaintiff failed to establish a violation of

his due process rights, that Defendants are entitled to qualified immunity as to this

issue, and that summary judgment should be granted as to this claim.  (*Id.* at 53.)

Plaintiff objects to these findings, arguing that Defendants' actions taken to

retaliate against him for filing grievances and lawsuits amount to punishment in violation

of his due process rights.  Plaintiff states he argued that Defendants' actions were taken

without a legitimate government purpose, and that the court failed to determine whether

Defendants' actions alleged by Plaintiff were taken for the purpose of punishment or

some other legitimate government purpose.

I affirm the Recommendation on this claim to the extent I have found that

summary judgment is appropriate as to retaliatory actions complained of by Plaintiff.

Magistrate Judge Tafoya noted as to those claims that Plaintiff did not establish that

Defendants' acts amounted to "punishment" as required to state a due process claim.

(Recommendation at 52-53.)  She also stated that "Plaintiff has not otherwise argued

that Defendants' actions were taken without a legitimate government purpose and, in most instances, Defendants have proffered such a purpose or the purpose is self-evident." (*Id.*)  I agree with and affirm these findings.  Plaintiff provided no facts to support his conclusory statements that these actions were taken without a legitimate government purpose.  (*See* Objections at 37.)  "Unsubstantiated allegations carry no probative weight in summary judgment proceedings."  *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007).

However, I found in Section II.B.1.f., *supra*, that the Recommendation should be rejected, and summary judgment should be denied, as to the retaliation claim based on the alleged taking of Plaintiff's legal and religious materials.  The question is whether Plaintiff has shown that those acts amounted to punishment or whether there was a legitimate governmental purpose for these acts.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Plaintiff has averred that these acts were done in retaliation for the exercise of his protected rights and I find, construing the evidence in the light most favorable to Plaintiff, that this could constitute punishment.  Further, while Defendants argued that these materials were either not taken by them or were taken pursuant to the one tub policy, I found that there are genuine issues of material fact as to this.  Thus, I find that there are genuine issues of material fact as to whether there was a legitimate governmental purpose for the taking of these materials.

Based on the foregoing, the recommendation to grant summary judgment as to the due process claim is affirmed in part and rejected in part.  It is affirmed to the extent I found summary judgment should be granted as to alleged retaliatory acts of Plaintiff.  It

is rejected as to the alleged retaliatory acts related to the confiscation of Plaintiff's legal and religious materials discussed in Section II.B.f., *supra*, for which I have denied summary judgment.

### 5. Equal Protection

Claim Nine alleges a violation of Plaintiff's right to equal protection under the Fourteenth Amendment. (*See* Recommendation at 53; TAC at 40.) Magistrate Judge Tafoya notes that Plaintiff asserts his religious materials were confiscated upon being placed in the disciplinary segregation housing unit because he was Muslim while other inmates of different faiths who were similarly situated were allowed their religious materials. (Recommendation at 53.) She found that Plaintiff did not submit any evidence to support this assertion. (*Id.* at 53-54.) In fact, she found that Plaintiff did not demonstrate that he was not permitted to have his religious materials, or that Defendants "deprived" him of his religious material because he is a Muslim. (*Id.*) Magistrate Judge Tafoya thus rejected Plaintiff's equal protection argument, including his class-of-one theory, on the basis that Plaintiff "failed to proffer any evidence proving that he was similarly situated in all material respects to other inmates at ACDF, nor has he demonstrated that he was intentionally treated differently from those other inmates." (*Id.* at 54.)[15] Accordingly, she found that Defendants are entitled to qualified immunity and that summary judgment should be granted as to this claim. (*Id.* at 55.)

---

[15] "Class of one doctrine focuses on discrimination not between classes or groups of persons, as 'traditional' equal protection doctrine does, but on discrimination against a specific individual." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012). "[A] plaintiff raising a class of one claim must proceed through essentially the same two steps a plaintiff alleging a class-based claim must." *Id.*

I first address Plaintiff's objection to some of the factual findings.  Plaintiff submits that, contrary to the Recommendation's finding, he provided evidence that disputes Defendants' contention that he could request access to additional property to rotate the items kept in their cells.  He averred he sent numerous requests and grievances for his religious materials to be returned, only to be denied by Defendants Doizaki, Wickstrom and Sauter.  He also averred that his religious materials were confiscated forcefully and without his consent, and that he did not get to choose whether to keep these materials.  While I agree that there are genuine issues of material fact on this issue, that does not provide a basis for rejecting the Recommendation as to this claim.

Plaintiff is alleging an equal protection claim based on his religion–that he was personally denied equal treatment on the basis of his religion.  *See Abdulhaseeb v. Saffle*, 65 F. App'x 667, 674 (10th Cir. 2003) (unpublished).  In order to survive summary judgment, Plaintiff must show that Defendants treated similarly situated groups differently (or for the class-of-one claim, that Defendants treated him differently) and that the differential treatment was motivated by impermissible consideration of religion.  *See Caruso v. Zenon*, No. 95-MK-1578 (BNB), 2005 WL 5957978, at *11 (D. Colo. 2005) (unpublished).

Plaintiff argues that he presented evidence to support these requirements.  I disagree.  Plaintiff's Third Amended Complaint alleges only that "[t]he level of disparate treatment, leveled at the plaintiff, by the defendants, is different than other [sic] similarly situated, and is a result of intention and purposeful discrimination, in violation of the Equal Protection clause of the Fourteenth Amendment."  (TAC ¶ 106.)  He does not

identify any other inmates who were similarly situated to him that were treated differently.  Plaintiff has submitted only "vague and conclusory allegations, without any specific facts" that other inmates were treated more favorably."  *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1323 (10th Cir. 2010); *see also Padilla v. Enzor*, 279 F. App'x 606, 613 (10th Cir. 2008) (equal protection claim failed because Padilla did not identify any inmate, similarly situated to him, that defendants treated differently) (unpublished); *Backus v. Ortiz*, 246 F. App'x 561, 564 (10th Cir. 2007) (the district court properly dismissed equal protection claim because Backus "did not provide any evidence to establish that any other inmates are similarly situated to him") (unpublished).

I also find that Plaintiff failed to present evidence or facts that support an inference that Defendants' actions were related to his religion.  Indeed, he alleges that these acts were done in retaliation for him filing grievances.  Accordingly, I agree with Magistrate Judge Tafoya that summary judgment is proper as to this claim.  *See Hughes v. Heimgartner*, No. 12-3250-SAC, 2013 WL 760600, at *2 (D. Kan. Feb. 27, 2013) (unpublished) (dismissal was appropriate on prisoner's equal protection claim alleging that he was denied his requests for Halal meals in segregation where plaintiff alleged no facts showing that he is or was similarly situated to other Muslim inmates and did not "allege facts suggesting that he was treated differently from other inmates because of his religion or some other suspect classification"); *Gibson v. Pacheco*, No. 09-cv-02328-WYD-KLM, 2012 WL 4033958, at *3 (D. Colo. Sep. 13, 2012) (unpublished) (equal protection claim failed because "Plaintiff failed to satisfy his burden of demonstrating that discriminatory intent was the motivating factor in revoking his

Kosher diet, or that he was treated differently from similarly situated inmates"); *see also Ciempa v. Jones*, 745 F. Supp. 2d 1171, 1197 (N.D. Okla 2010). Plaintiff's allegations are nothing "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Hughes*, 2013 WL 760600, at *2 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

      6.   <u>Conspiracy</u>

Plaintiff also objects to the Recommendation regarding Claim Eleven, alleging that Defendants conspired against Plaintiff in violation of his rights under 42 U.S.C. § 1983. Magistrate Judge Tafoya found that this claim fails as a matter of law, and that Defendants are entitled to qualified immunity as to this claim, as Plaintiff did not establish that his constitutional rights were violated. (Recommendation at 56.) Further, she found that Plaintiff failed to point to specific facts demonstrating that Defendants had a meeting of the minds and engaged in concerted action with the objective of violating his constitutional rights. (*Id.* at 55.) Accordingly, she recommends that summary judgment also be granted on this claim.

Plaintiff's Objections first assert that on December 19, 2010, a day after Plaintiff filed a grievance against Cummings, Cummings threatened him with a Captain's Segregation order–the worst punishment in jail–if Plaintiff continued filing grievances. Next, he asserts that on February 15, 2011, a day after he filed a grievance against Cummings, Cummings threatened to file a counterclaim against Plaintiff if he filed a lawsuit. Finally, on February 25, 2011, a day after Plaintiff filed a grievance against Doizaki, Doizaki threatened that "what happened to inmate Winfield will happen to you"

if Plaintiff continued to file grievances.  Plaintiff contends that after these threats and the

filing of his grievances and this lawsuit he encountered adverse repercussions, and

asserts that threats can substantiate the meeting of the minds element of a conspiracy

claim.  Thus, he asserts that Defendants are not entitled to qualified immunity.

I overrule Plaintiff's Objections and affirm the recommendation to grant summary

judgment as to this claim.  As noted by Defendants, the only facts Plaintiff asserts

supporting his claim of a meeting of the minds is in reference to two alleged individual

acts by Defendant Cummings and one alleged individual act by Defendant Doizaki.

Even when I view these facts in the light most favorable to Plaintiff, they do not show a

meeting of the minds among all Defendants–let alone a meeting of the minds between

Defendants Cummings and Doizaki–to engage in concerted action to violate Plaintiff's

constitutional rights.  Further, the conclusory reference to threats and adverse

repercussions also does not suffice to show a meeting of the minds between the

Defendants as required to state a conspiracy claim.

7.  Municipal Liability

Claim Twelve asserts a § 1983 municipal liability claim against the Arapahoe

County Sheriff's Department.  Plaintiff also names a number of the individual-defendant

employees of the Sheriff's Department in their official capacities, which capacity claims

were found to be "effectively identical to Claim Twelve."  (Recommendation at 56.)

Magistrate Judge Tafoya found that Defendants are entitled to summary judgment with

respect to the official capacity claims and that the Arapahoe County Sheriff's

Department is entitled to summary judgment on Claim Twelve because Plaintiff failed to

identify any action taken pursuant to an official policy that caused a violation of his constitutional rights.  (*Id.*)  She also found that the municipal claim failed because, even viewing the facts in the light most favorable to Plaintiff, he did not establish facts demonstrating that the individual defendants violated his constitutional rights.  (*Id.* 57.)

Plaintiff asserts in his Objections that he has identified action taken pursuant to a policy, practice or custom that caused a violation of his constitutional rights.  He argues in that regard that a "deliberate indifference" to the rights of a prison's inhabitants can be thought of as a city "policy or custom" and that "serial misconduct" directed at a single victim may be sufficient to establish municipal liability, citing *Baron v. Suffolk County Sheriff's Dept.*, 402 F.3d 225 (1st Cir. 2005).  I overrule Plaintiff's Objections as to the municipal liability claim.  Plaintiff's assertions on this issue are conclusory, and he failed to provide specific facts of any action taken pursuant to an official policy that caused a constitutional violation.  "Unsubstantiated allegations carry no probative weight in summary judgment proceedings."  *Cardoso*, 490 F.3d at 1197.  Thus, Plaintiff failed to establish a predicate constitutional harm necessary for an official capacity claim, *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978), and the recommendation to grant summary judgment as to Claim Twelve is affirmed.

8. State Law Claims

Claims Fifteen through Twenty-One allege violations of state law.  Magistrate Judge Tafoya found that since summary judgment was appropriate as to all the federal claims, the court should decline to exercise jurisdiction over the state law claims. (Recommendation at 57-58.)  This recommendation must now be rejected as moot, as I

-47-

found that summary judgment should be denied as to Plaintiff's religious claims as well

his due process and retaliation claims related to the alleged confiscation of his legal and

religious materials.  Since federal claims now remain pending, the Court retains

jurisdiction over the state law claims.[16]

        9.    <u>Appeal</u>

Finally, Magistrate Judge Tafoya recommended that the court certify, pursuant to

28 U.S.C. § 1915(a)(3), that any appeal from this recommendation would not be taken

in good faith and therefore *in forma pauperis* status be denied for the purpose of appeal.

(Recommendation at 58-59.)  Since there are claims that survive summary judgment,

this recommendation is rejected as moot.

III.   <u>CONCLUSION</u>

For the reasons discussed in this Order, the Recommendation of United States

Magistrate filed November 27, 2012 is affirmed in part and rejected in part.  Specifically,

it is rejected as to the recommendation that summary judgment be granted as to Claims

Four and Five asserting a violation of Plaintiff's religious rights.  It is also rejected as

the finding that summary judgment should be granted as to the portion of the retaliation

claims (One and Three) and the due process claim (Claim Eight) based on the alleged

confiscation of Plaintiff's legal and religious materials.  The portions of the

Recommendation that found the Court should not retain jurisdiction over the state law

claims and that the Court should make a certification pursuant to 28 U.S.C. § 1915(a)(3)

---

[16]  I also note that Defendants provided no other argument in their summary judgment motion as to why the state law claims should be dismissed.

are rejected as moot.  All other findings in the Recommendation are affirmed and adopted.  Accordingly, it is

ORDERED that the Recommendation of United States Magistrate Judge is **AFFIRMED IN PART AND REJECTED IN PART** in accordance with this Order.  In accordance therewith, it is

ORDERED that Defendants Settambrino, Mollender and Wood are **DISMISSED** from the case and shall hereafter be taken off the caption.  It is

FURTHER ORDERED that Claims Ten, Thirteen and Fourteen are **DISMISSED**.  It is

FURTHER ORDERED that Defendants' Motion for Summary Judgment filed on March 29, 2012 (ECF No. 136) is **GRANTED IN PART AND DENIED IN PART**.  It is **DENIED** as to (1) the portion of Claims One and Three alleging a retaliation claim against Defendants Doizaki, Emerson and Kleinheksel based on their alleged confiscation of Plaintiff's legal and religious materials, (2) the portion of Claim Eight alleging a due process violation based on the alleged confiscation of Plaintiff's legal and religious materials; (3) Claims Four and Five alleging a violation of Plaintiff's free exercise of his religion and the Religious Land Use and Institutionalized Persons Act; and (4) the state law claims–Claims Fifteen through Twenty-One.  It is **GRANTED** as to Claims Two and Seven (First Amendment right of access to the courts and to petition the government for grievances), Claim Nine (violation of equal protection), Claim Eleven (conspiracy under 42 U.S.C. § 1983), Claim Twelve (§ 1983 municipal liability claim), and the remainder of Claims One and Three alleging retaliation and Claim Eight alleging

violations of due process, *i.e.*, as to all actions of Defendants except the alleged confiscation of Plaintiff's legal and religious materials.  Finally, it is

ORDERED that Plaintiff's requested relief for preliminary and permanent injunctive relief against the Defendants is **DENIED AS MOOT**.

Dated:  March 25, 2013

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

-50-